---

THE CARO.[1]

*(District Court, E. D. New York. September 22, 1884.)*

COLLISION—STEAM AND SAIL VESSELS—APPROACHING STEAMER—TORCH-LIGHT—TUG AND TOW—LOOKOUT—LIGHTS.

Where a collision occurred on the ocean between a bark and a schooner which was in tow of a tug, and the tug's lights were seen by the bark some two miles off, but the bark's lights were not seen by the tug or the schooner till collision was inevitable, the night being dark, but a good night to see lights, and the vessels approached each other on such courses that the bark passed within 100 feet of the tug, *held,* that the bark was in fault for not showing a torch on her bow, and the collision must be held on that ground alone to have been caused by her fault; that, as the bark had her side lights placed on the mizzen rigging

1 Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

she was charged with the burden of showing clearly that the lights so placed would not be obstructed by the sails, and that the testimony failed to show this; that the tug was not in fault for having the lookout in the pilot-house, with the man at the wheel, when it was only 15 feet from the pilot-house to the stem, and a lookout stationed on the deck between the pilot-house and the stem would be in danger of being swept off by the sea; that the bark was liable for the damage arising from the collision.

In Admiralty.

*Owen & Gray*, for the bark.

*Jas. K. Hill, Wing & Shoudy*, for the schooner.

*E. G. Davis*, for the tug.

BENEDICT, J. These actions arise out of a collision that occurred on the night of August 15, 1884, on the ocean, about three miles to the southward of the Scotland light-ship, between the bark Caro and the schooner Josephine, at the time in tow of the steam-tug George H. Dentz. The Dentz was bound to New York, steering for the Scotland light. She had the schooner Josephine in tow upon a hawser some 75 fathoms long. The bark Caro was outward bound, and was sailing close-hauled upon the starboard tack. The tug was seen by the bark at the distance of some two miles, but the bark was not discovered by any person on the tug or on the schooner until collision between the bark and the schooner was inevitable. It is proved that the bark had her side lights set and burning, and that the tug had also the proper lights set, including the vertical lights required to indicate that she had a vessel in tow.

The proof shows plainly that the sole cause of the collision was the failure of the tug to see the bark in time. It is also plain that the night, although dark, was a good night to see lights. In the pilot-house of the tug were two persons; one engaged in steering, the other in looking out. This pilot-house was only 15 feet from the stem. A lookout stationed on the deck between the pilot-house and the stem would have been in danger of being swept off by the sea. Under these circumstances it was not negligence to station the lookout in the pilot-house of the tug.

The negligence on the part of the tug, if she was negligent, was not in placing her lookout in the pilot-house, but in the want of diligence in the man who was there placed. If the bark displayed the proper lights, the failure of those on the tug to see the bark in proper time must be attributed to a want of a diligent lookout. If the proper lights were not displayed by the bark, then the failure of those on the tug to see the bark in time must be attributed to the negligence of those on the bark in respect to their lights. One omission on the part of the bark in respect to her lights is conceded: she did not display a torch. In her behalf the contention is that the statute did not require her to exhibit a torch to the tug, because the tug was not approaching any point or quarter of the bark.

The testimony shows that the tug was approaching the bark upon such a course that she passed the tug within less than 100 feet. Un-

der such circumstances the tug was an approaching steamer, within the meaning of the statute, and the statute made it the duty of the bark, when she saw the tug so approaching, to show a lighted torch upon her bow. The burden is upon the bark to show that this omission did not contribute to cause the collision that ensued, and she has failed to do this. Upon this ground alone the collision must be held to have been caused by fault of the bark.

There is in addition considerable foundation for the belief that the location of the bark's side lights was such as to render them ineffectual to warn vessels approaching at a certain angle. These lights were placed upon the mizzen rigging, and of course aft the fore and main sail. The bark was sailing close-hauled, and the testimony leaves it in doubt whether the clew of the sails set forward of the light would not shut off the light to a vessel ahead. I am aware that many vessels carry their lights aft, and that reasons are given for preferring that location; but when on any vessel the side lights are placed aft the sails, I consider the vessel charged with the burden of showing clearly that the light so placed would not be obstructed by the sails when set.

The testimony in this case has not satisfied me that the side light of the bark would not be obstructed by the clew of her sail when close-hauled, owing to her side light being placed upon her mizzen rigging. An obscuration of the bark's side light by the clew of this sail would account for the fact proved, that not only did the two men on the tug fail to discover the bark's light until she was upon them, but the men on the schooner in tow of the tug also failed to see the bark's light until she was close at hand. The tug's lights were seen from the bark at a distance of two miles, and if the bark's lights were unobstructed, it is difficult to understand why neither of two men on the tug, and none of several men on the schooner in tow, saw them until the bark was close by, although, as they say, all were looking forward for lights. An obstruction of the bark's light by the clew of her sail would account for this; and, as before remarked, I am not satisfied that such was not the case, owing to the light's being placed in the mizzen rigging.

Upon these grounds, therefore, the libel of the owner of the bark Caro against the George H. Dentz must be dismissed, and the libel of the owner of the schooner Josephine must be sustained as against the bark Caro, and dismissed as against the tug Dentz.